O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CHRISTIAN HOLSOMBACH,                    )      NO. EDCV 09-00392-MAN
                                         )
              Plaintiff,                 )
                                         )      MEMORANDUM OPINION
        v.                               )
                                         )      AND ORDER
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
              Defendant.                 )
_____ )

     Plaintiff filed a Complaint on March 3, 2009, seeking review of the
denial by the Social Security Commissioner ("Commissioner") of
plaintiff's applications for supplemental security income ("SSI") and
disability insurance benefits ("DIB").  On March 30, 2009, the parties
consented to proceed before the undersigned Magistrate Judge pursuant to
28 U.S.C. § 636(c).

     The parties filed a Joint Stipulation on October 7, 2009, in which:
plaintiff seeks an order reversing the Commissioner's decision and
awarding benefits or, alternatively, remanding the case to the
Commissioner for a new administrative hearing; and defendant asks that

1

the Commissioner's decision be affirmed.   The Court has taken the parties' Joint Stipulation ("Joint Stip.") under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his applications for SSI and DIB on August 3, 2005, alleging an inability to work since November 25, 2004, due to back injury, bone spurs in his back, degenerative disc disease, right knee problems, and diabetes.  (Administrative Record ("A.R.") 12, 59, 82-95.)  His past relevant work ("PRW") includes work as a truck driver, ranch hand, business owner, security officer, and fast food cook and driver, as well as serving in the infantry of the United States Army.  (A.R. 137.)

Plaintiff's applications were denied initially on November 14, 2005, and upon reconsideration on January 13, 2006, and March 20, 2006.  (A.R. 42-43, 53-57, 59-63.)  Plaintiff requested a hearing.  (A.R. 52.)  On July 2, 2008, plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Thomas J. Gaye ("ALJ").  (A.R. 534-52.)  On August 27, 2008, the ALJ issued a written decision finding that plaintiff is not disabled.  (A.R. 10-18.)  On January 23, 2009, the Appeals Counsel denied plaintiff's request for review of the ALJ's decision. (A.R. 3-5.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that plaintiff has not engaged in substantial gainful

1  activity since November 25, 2004, his alleged disability onset date.
2  (A.R. 12.)

3

4      The ALJ determined that plaintiff has a combination of severe
5  impairments   consisting   of   lumbar   degenerative   disc   disease,
6  osteoarthritis of the knees with history of knee surgeries, cervical
7  strain, diabetes, depressive disorder not otherwise specified, anxiety
8  disorder not otherwise specified, and obesity.  (A.R. 12.)  The ALJ
9  concluded that plaintiff does not have an impairment or combination of
10 impairments that meets or medically equals one of the listed impairments
11 in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (A.R. 13.)

12

13     The ALJ found that plaintiff has the residual functional capacity
14 ("RFC") to perform light work as defined in 20 CFR §§ 404.1567(b) and
15 416.967(b), with the following limitations:  stand/walk for four hours
16 with five minutes of sitting for every 60 minutes of standing; sit for
17 six hours with five minutes of standing for every 60 minutes of sitting;
18 stoop, crouch, and climb on an occasional basis, up to approximately two
19 hours in an eight hour workday; and balance on a frequent basis, from
20 two to six hours in an eight-hour workday, although plaintiff needs to
21 use a cane on the left side due to subjective instability.  (A.R. 14.)
22 The ALJ further found that plaintiff:  is precluded from operating pedal
23 controls with his right leg, walking on uneven terrain, and climbing
24 ropes, ladders, or scaffolds; and has the mental RFC to perform simple,
25 repetitive tasks.  (*Id.*)

26

27     The ALJ determined that plaintiff is unable to perform any of his
28 PRW.  (A.R. 16.)  The ALJ found that plaintiff:  was born on April 26,

3

1973; was 31-years old at the onset of the alleged disability, putting plaintiff in the younger individual, age 18-49 category; possesses at least a high school education; and is able to communicate in English. (*Id.*)  The ALJ found that transferability of job skills is not material to the determination of disability, because the Medical-Vocational Rules, used as a framework, support a finding that plaintiff is "not disabled."  (A.R. 16-17.)   After considering the plaintiff's age, education, work experience, and RFC, and the testimony of a vocational expert, the ALJ found that there exist jobs in significant numbers in the national economy that plaintiff can perform.  (A.R. 17.)

The ALJ concluded that plaintiff has not been under a disability, as defined by the Social Security Act, from November 25, 2004, through August 27, 2008, the date of the ALJ's decision.  (A.R. 18.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).   Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance."  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice.  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

4

1    Although this Court cannot substitute its discretion for that of
2    the Commissioner, the Court nonetheless must review the record as a
3    whole, "weighing both the evidence that supports and the evidence that
4    detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of</u>
5    <u>Health and Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also*
6    <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is
7    responsible for determining credibility, resolving conflicts in medical
8    testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d
9    1035, 1039-40 (9th Cir. 1995). "Where the evidence as a whole can
10   support either a grant or a denial, [a federal court] may not substitute
11   [its] judgment for the ALJ's." <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554
12   F.3d 1219, 1222 (9th Cir. 2009)(citation and internal punctuation
13   omitted).

14

15   The Court will uphold the Commissioner's decision when the evidence
16   is susceptible to more than one rational interpretation. <u>Tommasetti v.</u>
17   <u>Astrue</u>, 553 F.3d 1035, 1038 (9th Cir. 2008); <u>Burch v. Barnhart</u>, 400 F.3d
18   676, 679 (9th Cir. 2005); *see also* <u>Batson v. Comm'r of Soc. Sec. Admin.</u>,
19   359 F.3d 1190, 1193 (9th Cir. 2004)("if evidence exists to support more
20   than one rational interpretation, we must defer to the Commissioner's
21   decision"). However, the Court may review only the reasons stated by
22   the ALJ in his decision "and may not affirm the ALJ on a ground upon
23   which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340
24   F.3d at 874. The Court will not reverse the Commissioner's decision if
25   it is based on harmless error, which exists only when it is "clear from
26   the record that an ALJ's error was 'inconsequential to the ultimate
27   nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d
28   880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56

5

1  (9th Cir. 2006)); *see also* <u>Tommasetti</u>, 533 F.3d at 1038; <u>Burch</u>, 400 F.3d
2  at 679.

3

4                              **DISCUSSION**

5

6      Plaintiff alleges the following three issues:  (1) whether the ALJ
7  properly considered if plaintiff met or equaled a listing; (2) whether
8  the ALJ properly developed the record; and (3) whether the ALJ properly
9  considered the type, dosage, and side effects of plaintiff's prescribed
10 medications.  (Joint Stip. at 2.)

11

12 **I.   <u>The ALJ Properly Considered Whether Plaintiff Met Or Equaled</u>**
13      **<u>A Listing</u>.**

14

15     An ALJ must evaluate the relevant evidence before concluding that
16 a claimant's impairments do not meet or equal a listed impairment.
17 <u>Lewis v. Apfel</u>, 236 F.3d 503, 512 (9th Cir. 2001).  "A boilerplate
18 finding is insufficient to support a conclusion that a claimant's
19 impairment does not do so."  *Id*.  Especially when the ALJ fails to
20 evaluate favorable evidence relevant to the criteria set forth in the
21 listing, remand may be appropriate to allow the ALJ to engage in a more
22 thorough analysis of the evidence.  *See* <u>Ribaudo v. Barnhart</u>, 458 F.3d
23 580, 584 (7th Cir. 2006).

24

25     Plaintiff contends that, other than providing a "perfunctory
26 holding," the ALJ failed to evaluate the relevant evidence before
27 concluding that the plaintiff does not meet or medically equal a
28 listing.  (Joint Stip. at 3.)  Plaintiff draws particular attention to

                                    6

the preamble of Listing 1.00B2, which defines loss of function associated with disorders of the musculoskeletal system and states:

> Regardless of the cause(s) of the musculoskeletal impairment, functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment . . . . [¶] Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. . . . [¶] [E]xamples of ineffective ambulation include, but are not limited to, . . . the inability to walk a block at a reasonable pace on rough or uneven surfaces . . . .

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.00B2a-b.

Plaintiff also relies on Listing 1.02 of the musculoskeletal category of impairments, which states:

> *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction,

7

or ankylosis of the affected joint(s).  With:

    A.  Involvement of one major peripheral weight bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.02.

Plaintiff contends that he "meets or medically equals listing 1.002b [*sic*]."[1]  (Joint Stip. at 5.)  Plaintiff relies on testimony from the medical expert, Dr. Joseph Jensen, who stated that plaintiff "does demonstrate some subjective instability, occasional giving way of the knee while walking, and I see where probably the use of a single cane in the opposite hand would be appropriate."  (A.R. 541.)[2]  The medical expert also noted that plaintiff does have chronic joint pain and stiffness, as well as some "limitation of motion," in his right knee. (A.R. 543.)  Plaintiff also relies on statements by Dr. Carl Jansen, a physician who interpreted an MRI of plaintiff's knee as revealing:  mild attrition of the body of the medial meniscus; mild-to-moderate

---

[1]    Plaintiff apparently contends that he satisfies Listing 1.00B2b and, thus, meets or equals a listed impairment at step three. Listing 1.00B2b, however, addresses how the Social Security Administration defines "inability to ambulate effectively" as that term is used in the Listings themselves; Listing 1.00B2b does not itself establish a distinct listed impairment that can be met or equaled for purposes of the step three analysis.  The listed impairment actually in issue here, which plaintiff must meet or medically equal for step three purposes, is Listing 1.02, which describes major dysfunctions of a joint under the category of musculoskeletal impairments.

[2]    On further questioning, the medical expert observed that no treating physician had prescribed a cane and the clinical evidence did not indicate internal derangement, but he nonetheless believed a cane would be "indicated" based on plaintiff's subjective perception of instability.  (A.R. 543-44.)

chondromalacia; a small right knee effusion; and very small Baker's cyst. (A.R. 256.) Plaintiff further relies on the ALJ's RFC finding, which included a limitation that plaintiff "is precluded from . . . walking on uneven terrain." (A.R. 14.)

Plaintiff's assertion that the ALJ's step three analysis was "perfunctory," and that the ALJ failed to evaluate the evidence at step three, is misguided. The ALJ expressly noted the contention of plaintiff's counsel, made at the hearing, that plaintiff's knee osteoarthritis meets Listing 1.02 due to plaintiff's inability to ambulate effectively secondary to instability, pain, stiffness, and decreased range of motion. (A.R. 13.) The ALJ concluded, however, that "the severity of claimant's impairments does not meet or medically equal the requirements of any listed impairment based on the objective evidence and claimant's activities, as discussed below." (*Id.*) In drawing that conclusion, the ALJ relied on: the medical expert's testimony that plaintiff's impairment does not meet or equal a listing; the fact that, while plaintiff may have a subjective belief that he needs to use a cane due to instability, there is no medical evidence of record supporting such a need; his review of the medical evidence of record relating to plaintiff's back and extremity impairments, which was the same evidence on which the medical expert relied in rendering his opinion; and the evidence regarding plaintiff's activities. (*Id.* and at 15-16.)

The opinion of a non-examining medical expert may constitute substantial evidence, upon which the ALJ may rely, when it is consistent with independent medical evidence of record. *See, e.g.,* <u>Thomas v.</u>

9

Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001); see also Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996)(noting that "the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings").  The record shows that the medical expert considered the medical evidence of record (including the MRI interpretation by Dr. Carl Jansen on which plaintiff now relies).  At the hearing, the medical expert acknowledged that the evidence shows that plaintiff:  has experienced degenerative changes in his right knee (as found by Dr. Jansen); has chondromalacia (as found by Dr. Jansen); has a tear of the medial meniscus (as found by Dr. Jansen); has undergone two arthroscopic procedures; experiences chronic joint pain  and stiffness, as well as limitation of motion; and subjectively experiences a feeling of instability.  (A.R. 540-43.)[3]  The medical expert concluded that this evidence was not sufficient to show that plaintiff meets or equals the musculoskeletal listing.  (A.R. 540.)

The record plainly shows that the ALJ actually considered the step three issue in the light of the medical evidence of record and the medical expert's opinion.  The ALJ concluded that Listing 1.02 was not satisfied.  Plaintiff's first issue, essentially, is premised on his disagreement with the medical expert's conclusion, on which the ALJ relied.  Plaintiff, however, fails to point to any inconsistent medical

---

[3]     Plaintiff's first hearing, scheduled for October 5, 2007, was stayed until July 2, 2008, to allow both the ALJ and the medical expert to consider 162 pages of additional medical evidence supplied by plaintiff.  (A.R. 2, 531, 537.)  This fact will be more fully discussed infra, in addressing plaintiff's second issue.

evidence of record.[4]    None of plaintiff's treating or examining physicians supplied an opinion contrary to that of the medical expert regarding whether any of plaintiff's impairments met or equaled a listing.    Additional evidence in the record, such as plaintiff's activities during the period of disability and objective medical records more thoroughly discussed below, are consistent with the expert's opinion. (*See* A.R. 16, 374, 385, 410.)   The medical expert's opinion on the step three issue, thus, constituted substantial evidence upon which the ALJ was entitled to, and did, rely.   Accordingly, the ALJ's determination that plaintiff did not meet or equal a listed impairment is supported by substantial evidence and does not constitute reversible error.

**II.   <u>The ALJ Properly Developed The Record</u>.**

Although a claimant bears the burden of proving disability, the ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'"   <u>Tonapetyan</u>, 242 F.3d at 1150 (*quoting* <u>Smolen v. Chater</u>,

___

[4]   Instead, plaintiff professes to be "confound[ed]" by the ALJ's inclusion, in his RFC assessment, of limitations regarding operating pedal controls and walking on uneven terrain.  Plaintiff argues that the inclusion of such limitations necessarily means that plaintiff meets Listing 1.02, because Listing 1.00B2b purportedly states that an inability to walk on uneven terrain equates to an inability to ambulate effectively.  (Joint Stip. at 5.)  In fact, Listing 1.00B2b cites as an example of "ineffective ambulation" "the inability to walk a block at a reasonable pace on rough or uneven surfaces," and thus, it includes distance and temporal components.  The fact that the ALJ adopted the medical expert's recommendation of these two limitations (A.R. 542) does not establish that plaintiff is unable to ambulate effectively.  Plaintiff's attempt to bootstrap the ALJ's imposition of limitations for purposes of the RFC assessment to the step three analysis is unpersuasive.

11

80 F.3d 1273, 1288 (9th Cir. 1996)). "This duty extends to the represented as well as to the unrepresented claimant." Tonapetyan, 242 F.3d at 1150. When a claimant is not represented by counsel, an ALJ "must be especially diligent in exploring for all the relevant facts." Id. The ALJ's duty to develop the record extends from the basic premise that social security hearings are not adversarial in nature. Orcutt v. Barnhart, 2005 WL 2387702, *3 (C.D. Cal. 2005); see also Sims v. Apfel, 530 U.S. 103, 111, 120 S. Ct. 2080, 2085 (2000)("It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits"). "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).

As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence, particularly evidence from treating physicians, are addressed, so that the disability determination can be fairly made on a sufficient evidentiary record, whether favorable or unfavorable to the claimant. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999); Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978); see also 20 C.F.R. §§ 404.1527(c)(3) and 416.927(c)(3) (providing steps to obtain additional evidence when medical evidence is insufficient to determine whether claimant is disabled); 20 C.F.R. §§ 404.1512(e) and 416.912(e) (providing measures for obtaining additional information from treating doctors). When it is necessary to enable the ALJ to resolve a disability issue, the duty to develop the record may require consulting

a medical expert or ordering a consultative examination.  *See* 20 C.F.R. §§ 404.1519a and 416.919a; <u>Armstrong v. Comm'r</u>, 160 F.3d 587, 590 (9th Cir.1998)(when the record indicated that there were diagnoses of mental disorders prior to the date of disability, as well as evidence of the existence of those disorders even prior to the diagnoses, the ALJ was required to call a medical expert to assist in determining when the plaintiff's impairments became disabling); <u>Pearson v. Bowen</u>, 866 F.2d 809, 812 (5th Cir. 1989)(recognizing ALJ's "duty of 'full inquiry' under 20 C.F.R. § 416.1444").

    On the other hand, an ALJ is not obliged to undertake the independent exploration of every conceivable condition or impairment a claimant might suffer.  An ALJ does not fail in his or her duty to develop the record by not seeking evidence or ordering further examination or consultation regarding a physical or mental impairment if no medical evidence indicates that such an impairment exists.  *See* <u>Pearson</u>, 866 F.2d at 812 (requiring that claimant must "'raise a suspicion concerning such an impairment'" before an ALJ is required to discharge his duty of full inquiry by ordering a consultative examination)(citation omitted); <u>Breen v. Callahan</u>, 56 Soc. Sec. Rep. Ser. 340, 1998 WL 272998, *3 (N.D. Cal. May 22, 1998)(noting that, in the Ninth Circuit, the ALJ's obligation to develop the record is triggered by "the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision").

    Plaintiff contends that "the ALJ failed to properly develop the record regarding Plaintiff's inability to effectively ambulate." (Joint

13

Stip. at 14.)   Citing Dr. Carl Jansen's above-described interpretation of plaintiff's MRI results and the medical expert's above-described hearing testimony regarding plaintiff's claimed knee condition, plaintiff asserts that the ALJ erred in failing to find that plaintiff's knee impairment meets or equals a listed impairment and speculates that the reason for the ALJ's allegedly erroneous step three finding was that the ALJ found this evidence ambiguous; plaintiff then argues that "[i]f the ALJ had any doubts about" plaintiff's ability to ambulate effectively, given his knee issues, the ALJ was obligated to develop the record further, including by continuing the hearing and requesting additional treating source records.   (Joint Stip. at 12.)   Plaintiff's attempt to manufacture an ambiguity in the evidence, premised solely on his disagreement with the ALJ's step three determination, is unavailing.

As discussed *infra*, in finding that plaintiff did not meet or equal a listing based on his knee impairment, the ALJ relied on "the objective evidence and claimant's activities," as well as the testimony of the medical expert who "did not see [in the record] where there would be [evidence to support] either a meeting or equaling of musculo-skeletal impairment." (A.R. 13, 16, 540.)   The ALJ specifically noted a number of activities that plaintiff has performed during the relevant period, including digging a hole with a pick, walking for three miles, and driving a large SUV, and observed that these activities indicate that plaintiff's level of functioning may be much greater than the RFC assessed.   (A.R. 16, 374, 385, 410, 507.)   The ALJ also noted, as did the medical expert, that "there is no medical opinion in the record

regarding claimant's need to use a cane." (A.R. 13.)[5] Neither the ALJ nor the medical expert indicated that they perceived there to be any ambiguity in the evidence or inadequacy of the record with respect to plaintiff's ability to ambulate effectively. Indeed, as discussed earlier, the medical expert expressly noted the medical evidence on which plaintiff now relies and unequivocally concluded that there was no basis for finding that plaintiff meets or equals the relevant Listing.

Moreover, plaintiff ignores the fact that the ALJ continued the hearing to permit plaintiff to submit additional medical evidence and both the ALJ and the medical expert to consider such additional evidence. The ALJ continued the hearing set for October 5, 2007, to allow himself and the medical expert adequate time to consider 120 pages of medical records submitted by plaintiff's counsel on September 28, 2007. (A.R. 358, 531-33.) On April 3, 2008, the ALJ rescheduled the hearing for July 2, 2008. (A.R. 19.) On May 1, 2008, plaintiff submitted 25 additional pages of medical records. (A.R. 479-504.) On June 19, 2008, plaintiff submitted 15 additional pages of medical records. (A.R. 505-20.)[6] Although plaintiff's counsel stated, at the

_____

[5] Again, although the medical expert stated that the use of a cane would be an "appropriate" limitation, he clarified that the objective medical evidence did not indicate a basis for finding instability and that he based his cane limitation on only plaintiff's subjective perception of instability.

[6] At the July 2, 2008 hearing, the medical expert stated that he had received the additional evidence submitted in September 2007, as well as the 25 additional pages of records submitted on May 1, 2008, but he had not received the 15 additional pages submitted on June 19, 2008. (A.R. 538.) Plaintiff's attorney then summarized the 15 additional pages on the record (which consisted of emergency room records for a car accident plaintiff had), stated that they did not provide "much new information regarding the chronic problems that [plaintiff] had," and waived having the medical expert review them. (A.R. 538-39.) The

July 2, 2008 hearing, that he would send the ALJ a one-page memorandum within 10 days regarding counsel's argument that plaintiff met or equaled Listing 1.02 (A.R. 549-51), there is no evidence that plaintiff's counsel did so (A.R., *passim*).

Plaintiff has not identified any ambiguity or inadequacy in the record with respect to his assertion that he cannot ambulate effectively.  He also has failed to identify any additional medical evidence bearing on this issue that the ALJ allegedly would have adduced had he developed the record further.  There is no basis for finding that the ALJ failed to meet his duty with respect to developing the record, much less for finding reversible error.

**III.  <u>The ALJ Did Not Commit Error With Respect To Consideration Of The Type, Dosage, And Side Effects Of Plaintiff's Medications</u>.**

Pursuant to SSR 96-7p, an ALJ must consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms."  However, an ALJ need only consider those medication side effects that have a "'significant impact on an individual's ability to work.'"  <u>Erickson v. Shalala</u>, 9 F.3d 813, 817-18 (9th Cir. 1993)(citation omitted).  The "claimant bears the burden of proving that a medication's side effects are disabling."  <u>Short v. Astrue</u>, 648 F. Supp. 2d 1185, 1191 (C.D. Cal. 2009); *see also*

medical expert then observed that the medical records he possessed included these same emergency room records.  (A.R. 539.)  In fact, the 16 additional pages submitted on June 19, 2008, are duplicative of the additional records submitted on May 1, 2008, and thus, they were before the medical expert, as well as the ALJ, prior to the hearing.  (*Compare* A.R. 483-95, 498, 520 with A.R. 506-20.)

16

Thomas, 278 F.3d at 960 (rejecting claim that administrative law judge improperly excluded the side effects of medication, because there was no objective evidence that the claimant's medications caused the side effects she alleged and her testimony in this respect properly was found not credible); Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)(rejecting challenge to administrative law judge's finding that claimant's medications did not preclude him from working, when claimant did not produce any "clinical evidence showing that narcotics use impaired his ability to work," and thus, he did not meet his burden of proving that his claimed impairment was disabling).  The ALJ is not obligated to consider a claimant's allegations of side effects when the claimant has "provided no evidence to support this claim other than a statement in his daily activities questionnaire." Hopkins v. Astrue, 227 Fed. Appx. 656, 2007 WL 1120146, *1 (9th Cir. 2007).  This is so because "'a claimant's self-serving statements may be disregarded to the extent they are unsupported by objective findings.'" Id. (quoting Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985)).  Even "passing mentions of side effects" in some medical records would be insufficient in the absence of evidence of side effects "severe enough to interfere with [a claimant's] ability to work." Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001).

Plaintiff observes that, in two progress notes, there is an indication that he takes four medications -- Citalopram, Glipizide, Diclofenac, and Omeprazole.  (Joint Stip. at 16, citing A.R. 282, 375.) He complains that "the ALJ totally failed to discuss or even mention the type, dosage and side effects of" these four prescribed medications. (Id.)  Plaintiff, however, fails to identify any adverse side effects he

17

experiences from taking these four medications and to establish that any
such side effects are severe enough to interfere with his ability to
work.

At the hearing, plaintiff was not asked, and did not testify, that
he experiences any side effects from medications, and his counsel did
not make any such argument.  (A.R. 547-49.)  In an unsigned and undated
Disability Report, plaintiff stated that:  Diclofenac makes him drowsy,
but when taken with another medication (Vicodin), causes him to be
"hyper" and unable to sleep; and Omeprazole makes him drowsy.  Plaintiff
did not list Citalopram (an anti-depressant) and Glipizide (a blood
glucose regulator) among the medications he was taking, although he did
list Glyburide (another blood glucose regulator) and assert that he must
avoid excessive and prolonged exposure to direct or artificial sunlight.
(A.R. 187.)  In a December 28, 2005 Disability Report, plaintiff
indicated that Diclofenac makes him tired and that he experiences no
side effects from Omeprazole.  He did not list Citalopram and Glipizide
among the medications he was taking, but did indicate that he
experiences no side effects from Glyburide and is made tired by
Amitriptyline (an antidepressant).  (A.R. 129-30.)  In a March 2006
Disability Report, plaintiff identified several medications he takes.
He indicated:  "none" when asked to identify any side effects he
experiences from Omeprazole; and upset stomach and a "little" dizziness
from Diclofenac.   He did not list Citalopram and Glipizide as
medications he was taking, but he indicated that Glyburide "sometimes"
causes him to have low blood sugar.  (A.R. 120-21.)  In July and
September 2006, plaintiff reported to his treating physicians that he
was not experiencing any adverse side effects from his medications

1  (including Citalopram), was "happy" with his medication regimen, and
2  described his energy level as fair to good.  (A.R. 416-19. 436.)

4      Plaintiff's argument devolves to a contention that, because there
5  is objective medical evidence that he takes medications, the ALJ was
6  required to address the "side effects" of such medications.  Plaintiff,
7  however, has not shown that there is any objective medical evidence
8  establishing, or tending to establish, that he actually does experience
9  adverse side effects from his medications, much less side effects
10 sufficiently severe to impair his ability to work.  At most, the record
11 contains only his own self-serving statements set forth above.  As
12 discussed earlier, these mere self-serving statements are insufficient
13 to satisfy plaintiff's burden to "prov[e] that a medication's side
14 effects are disabling."  Short, 648 F. Supp. 2d at 1191; see Osenbrock,
15 240 F.3d at 1164; Hopkins, 2007 WL 1120146, at *1; Nyman, 779 F.2d at
16 531.

18     Plaintiff did not meet his burden, in the proceedings before the
19 Social Security Administration, of showing that he suffers from adverse
20 side effects severe enough to that have a significant impact on his
21 ability to work, and he has not established any such disabling effects
22 here.  Accordingly, no reversible error can be found based on the ALJ's
23 asserted failure to consider properly the type, dosage, and side effects
24 of plaintiff's medications.

26                              **CONCLUSION**

28     For all of the foregoing reasons, the Court finds that neither

                                     19

reversal of the ALJ's decision nor remand is warranted.  Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration and dismissing this case with prejudice.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 10, 2010

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

20